# FACTORS' & TRADERS' INSURANCE COMPANY *v.* MURPHY & Another.

IN ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Submitted April 18th, 1884.—Decided May 5th, 1884.

*Bankruptcy—Mortgage—Sale.*

This court has jurisdiction in error over a judgment of the Supreme Court of Louisana, in a suit by one citizen of that State against another for the foreclosure of a mortgage on real estate therein, when the only controversy in the case is as to the effect to be given to a sale of the property under an order of the District Court of the United States in bankruptcy, to sell the bankrupt's mortgaged property free from incumbrances.

When a mortgagee of real estate becomes owner of the equity of redemption, a court of equity will not regard the mortgage as merged by unity of possession, if it was the evident intent that the two titles should be kept distinct,

or if the purchaser has such an interest in keeping them distinct that this intent can be inferred.

A sale of real estate of a bankrupt by order of court free from the lien of a mortgage creditor is invalid, as to the creditor and as to the purpose of discharging his lien, unless he is made a party to the proceedings. *Ray* v. *Norseworthy*, 23 Wall. 128 affirmed.

In such case it is not sufficient to notify the person who holds the evidences of his debt, and claims to be his agent, if the record represents that person as acting for another party, and makes no mention of the mortgage creditor.

The real estate of a bankrupt was sold by order of court free of incumbrances and purchased by A. One of the mortgages on the estate was given to secure four notes of which at the time of the sale A held two, and B held two. A and other mortgage creditors were made parties to the proceedings, but B was not made party. C held B's notes and claimed to represent him in the proceedings, but the record only showed C as acting for D. B brought suit to foreclose the mortgage as to his two notes, claiming that as to A's notes the lien was cut off by the purchase of the equity, and as to the rest of mortgage liens as well as to A's they were discharged by the sale. Held (1) that B had the right to a decree of foreclosure. (2) That this decree should be made for the benefit of all the mortgage creditors in the order of their priority, including A. (3) That the expenses of A for taxes, prior liens, improvements, &c., growing out of the former sale should be first paid out of the proceeds of the new sale. (4) That A should account for rents and profits if there were any.

This suit was originally brought by the widow Mary Murphy, in the Fifth District Court of the Parish of Orleans, to foreclose a mortgage upon real estate in Louisiana, which had been the property of a bankrupt, and had been sold by order of the District Court of the District of Louisiana free from incumbrances, and purchased by a holder of notes secured by the same mortgage. The facts which raise the federal question are stated in the opinion of the court. The Supreme Court of the State, to which the case came on appeal, decreed a sale of the mortgaged property to satisfy Mrs. Murphy's debt and interest. This writ of error was sued out to review that judgment.

*Mr. R. L. Gibson* and *Mr. G. L. Hall* for plaintiff in error.

*Mr. James David Coleman* and *Mr. Charles W. Hornor* for defendant in error, Murphy.

MR. JUSTICE MILLER delivered the opinion of the court.

This was a writ of error to the Supreme Court of Louisiana.

The defendant in error sued in the proper court of the State to foreclose a mortgage given by Paul Cook and Justus Vairin, Jr., to secure the payment of four notes of $10,000 each, given by them in their partnership name of Paul Cook & Co., of which she was then the holder and owner of two, all the notes being of the same date. She alleged that Cook and Vairin had been declared bankrupts, and that by certain proceedings in the bankruptcy court, and under its order, the mortgaged property had been sold free from incumbrance, and bought in by several persons who had liens on it, by whose order it was conveyed to the Factors' and Traders' Insurance Co., which held the other two notes secured by the mortgage. She further alleged that the effect of this sale was to extinguish the mortgage as to the notes held by that company, and all other liens but hers, and to make that company liable to her for the amount of these notes with a first lien on the property mortgaged. That the sale under the order in bankruptcy was not binding on her, because she was not made a party to the proceeding and had no notice of it, while it was binding on all the other lien holders whose liens were thereby discharged, leaving hers a paramount lien on the property.

The insurance company and the other parties interested answered and insisted that Mrs. Murphy was bound by the bankruptcy sale because she was represented by T. A. Archer, who, as her agent, and having possession of her notes, took part in all the proceedings, and in that character was one of the purchasers, and joined in directing the conveyance to be made to the insurance company. They admit her interest in the property in proportion to the extent of her notes, but set up certain expenses and charges on it paid by them for taxes, necessary improvements, and prior liens to the amount of $11,454.83 as a superior claim to her notes.

The testimony of Mr. Archer shows that he understood himself as acting for Mrs. Murphy, having as her agent possession of the two notes now in suit. That in that character and no other he took part in all the proceedings for the sale and purchase of the mortgaged property, and that during that time he had frequent conversations with her and explained to her what

was going on, to which she made no dissent.    But he does not say that she at any time in express terms authorized him to represent her in the sale or in the proceedings connected with it.    The record of those proceedings, on the contrary, affirms that Mr. Archer acted for Marshall J. Smith & Co., of which company he was a member, and no mention of Mrs. Murphy is found in the record of that case, though both Archer and Smith have sworn they had no real interest in the matter, and only appeared as representing Mrs. Murphy's notes then in their possession and with her assent.

The Supreme Court of Louisiana, on appeal, held that Mrs. Murphy was not a party to the proceeding in bankruptcy, and was in no sense bound by the sale of the mortgaged property, but that the sale had the effect of extinguishing and satisfying all the liens on the property but hers, and left her notes the only lien on it.    While it held that the insurance company was not bound for the debt *in personam,* it decreed that unless the company paid her debt, with interest, costs, and five per cent. attorney's fees, the property should be sold to raise the money, and denied the company's claim for taxes and other necessary outlays for the benefit of the property.

Counsel for defendant in error deny the jurisdiction of this court and move to dismiss the writ.    But it is apparent that the only controversy in the case relates to the effect to be given to the sale under the order of the District Court of the United States, to sell the mortgaged property free from incumbrance.    Both parties assert rights under this order and sale.    Plaintiffs in error assert that the sale as made was valid, and, being sold free from incumbrances, extinguished Mrs. Murphy's lien as well as others.    Defendant asserts that it had the effect of discharging all other liens but hers, and thus gave her the exclusive, paramount lien on all the property so sold.    Both the parties, therefore, rely upon rights under federal authority, and as the right of plaintiff in error was denied by the court the writ of error lies.

As regards the merits, it is impossible to shut one's eyes to the injustice of the decree.    The plaintiffs in error, who were led to suppose that they were acting in concert with Mrs.

Murphy, or at least with the holders of her notes by her consent, join in purchasing the property for the benefit of all the lien holders, and receive the title in trust for their common benefit. It is immediately necessary, to save it from loss, to pay taxes and other prior liens and to make improvements necessary to its preservation to the extent of over $11,000, for which they advance the money. Mrs. Murphy, who was aware of all these proceedings, and that the holder of her notes co-operated in them by virtue of those notes, now, when, by reason of depreciation in the value of the property, it is insufficient to pay her debt alone, asks that the others shall be sacrificed, that it shall all go to satisfy her debt, and even the money advanced to save the property from sale for taxes and from falling to decay, which is paid by others and enures now to her benefit, shall fall upon them as a dead loss. If this be the necessary legal result of that proceeding in bankruptcy the decree of the State court must be affirmed, but it will certainly be a result at variance with the policy of a statute whose main purpose was to secure an equal distribution of an insolvent debtor's property among all his creditors.

The first question to be decided is whether Mrs. Murphy was a party to the bankruptcy proceeding, so as to bind her to the order that the sale was free from incumbrance, by which, while her lien with all others was discharged, she had a right to her proportion of the price bid for it.

We are of opinion, with the Supreme Court of Louisiana, that the record in this case does not show such service of process or other notice as makes Mrs. Murphy such a party to the bankruptcy proceeding as binds her to the sale and discharges her lien. The case of *Ray* v. *Norseworthy*, 23 Wall. 128, is conclusive on that subject, and is, we think, sound in principle. The effect of this proposition is, that after the sale was made she was at liberty to accept such a part of the sum for which the property sold as her two notes would entitle her to in their relation to all other liens on it, by which she would have ratified the sale; or to proceed in her own way to subject the property to payment of her debt, which she has done by the foreclosure suit now on review.

But in this suit she has not elected to proceed in disregard of that sale, whereby, when the property would be sold under her decree of foreclosure, the proceeds of it must be brought into court and distributed among the lien holders according to their priorities; but she seeks to affirm that sale as free from all incumbrances, except her own, thereby assuming the benefit of a decree to which she was not a party while denying its obligation on herself, without which the decree would not have been made.

The adoption of this view by the Supreme Court of Louisiana is based by that court upon the doctrine of confusion found in the civil code of that State.

Without examining into the decisions of the State courts on that subject, it is sufficient to say that in construing the effect of this sale under the order of the District Court of the United States, it must be decided by those general principles which govern bankruptcy proceedings under that statute, rather than the code of the State in regard to voluntary sales of mortgaged property between individuals.

In this view of the subject, it is not possible, consistently with any equitable view of the case, to hold that this sale discharged part of the liens against the property and increased thereby the value of other liens at the expense of the purchasers. That the parties who honestly bid off the property and consented to hold it discharged of the claim of the assignee, but for the benefit of all the lien holders, thereby cut themselves off from any benefit of these liens to make good a lien which had no priority over theirs. If this were done by mistake in supposing all the lien holders were represented or were consenting, the mistake should be rectified by restoring the parties to their rights as if no sale had been made. If Mrs. Murphy chooses to assert her lien and demand a new sale of the land, let her have it, but it must be subject to the rights of all parties as they stood before the other sale, which, by reason of her absence and her objections, is ineffectual to bar incumbrances, as it was intended to do.

So far as the doctrine of confusion of the Louisiana Code may be said to be the equivalent of the doctrine of merger, in

the common law and in equity, in the latter it has been uniformly held that where an incumbrancer, by mortgage or otherwise, becomes the owner of the legal title or of the equity of redemption, the merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, said merger was against his manifest interest.

Applying this just principle to the case before us, it is quite apparent that no merger can be sustained.

It is clearly proved that the property was purchased, as they supposed, at the time by all the lien holders, Mr. Archer acting for Mrs. Murphy, at a sum far below the amount due on the liens, and that no money was paid except the costs of sale, or intended to be paid, but that the property should be held, as it was before the sale, for the benefit of all these lien holders, in the proportion of their interest. This was carried into effect, not by a new sale to the insurance company, as is asserted, but by a conveyance under that sale, at the request of these lien holders, to that company, as trustee, for them all.

It was not, therefore, intended to extinguish their liens by this proceeding, but to keep them alive until the property should finally be sold and the money divided. So it is equally clear that it was not for the interest of these lien holders, who were actually purchasing, to extinguish their liens and thereby make Mrs. Murphy's notes a first lien, and enable her to get all her money at their expense.

The rule on this subject is thus stated by Jones on Mortgages, sec. 848 : " It is a general rule that when the legal title becomes united with the equitable, so that the owner has the whole title, the mortgage is merged by the unity of possession. But if the owner has an interest in keeping these titles distinct, or if there be an intervening right between the mortgage and the equity, there is no merger." And in the case of *Forbes* v. *Moffatt*, 18 Vesey, 384, Sir William Grant says : " The question is upon the intention, actual or presumed, of the person in whom the interests are united." Other authorities cited by Mr. Jones sustain the principle. *Clark* v. *Clark*, 56 N. H. 105, is directly in point. *Loud* v. *Lane*, 8 Metcalf, Mass. 517 ;

*Campbell* v. *Carter*, 14 Ill. 286; *Armstrong* v. *McAlpin*, 18 Ohio St. 184.

It is to be observed, in the present case, that, as the mortgage, which secured the two notes owned by the insurance company, was the same which secured Mrs. Murphy's notes, as between which there was no priority, it would hardly be held on the order of the court to sell the property free from *all* incumbrances, that the purchase by the insurance company merged part of the mortgage, while part was kept alive. This is expressly decided in *Winker* v. *Flood*, 103 Mass. 474.

The result of these views is, that while Mrs. Murphy is not precluded by the judicial sale, under the order of the bankruptcy court, from foreclosing the mortgage for her notes, neither are the parties who took part in that proceeding barred of the right to set up their liens, as they existed before that sale, and share in the proceeds of the new sale accordingly; and, so far as the expenditures of the insurance company, in payment of taxes and prior liens and in improvements necessary to the prevention of loss and deterioration in the property, were required for the benefit of all the lien holders, it is to be first paid out of the proceeds of the sale, and plaintiff in error should account for rents and profits, if there were any.

*The decree of the Supreme Court of Louisiana is reversed, with directions to enter a decree in conformity to this opinion; and it is so ordered.*