### AGNEW v. CHARLOTTE, COLUMBIA & AUGUSTA R. R. CO.

A debtor gave to his surety a mortgage of land to secure the debt and to indemnify the surety; afterwards another creditor obtained judgment against this debtor; and after that, such surety being required to pay the debt, the debtor conveyed some of this land to such surety, the conveyance stipulating that it was made subject to said mortgage, which was to remain open to protect the surety against dower, liens, and encumbrances. The judgment creditor then levied, sold, and purchased a portion of the land so conveyed, and brought action for its recovery. *Held*, that the express agreement of the parties prevented a merger, that the mortgage remained open, and that the plaintiff was not entitled to recover the land. MR. JUSTICE McIVER, *dissenting.*

Before Wallace, J., Richland, December, 1884.

This was an action by John Agnew against the Charlotte, Columbia & Augusta Railroad Company, commenced May 30, 1884. The opinion states the case. The Circuit Judge rendered the following judgment:

The issue presented for me to decide is as follows : The plaintiff claims that the tract of land, having been conveyed by the mortgagor to the mortgagee, the equity of redemption and the legal estate became *merged ;* and the *mortgage,* upon the bond being paid, became *extinguished.* The defendant claims that the *intention expressed* in the conveyance from Hoffman to defendant kept the mortgage open and prevented its extinguishment.

The general rule of law is, that where the mortgagee purchases the land mortgaged to him, the equitable and legal estates, becoming thus *united* in him, are *merged* and the *mortgage* thereby *extinguished.* The courts of most of the States and of England and the United States Supreme Court hold that where it can be shown that it was the *intention* of the parties, or where this intention can be inferred from it being the *interest* of the grantee, to keep the mortgage open, then the mortgage will *not be extinguished. Insurance Company* v. *Murphy,* 111 *U. S.,* 744. This, however, seems not to be the law in South Carolina, as I interpret *Devereux* v. *Taft,* 20 *S. C.,* 555.

But no case has been cited from the decisions of this or any other State, where a court has held that when the intention to keep the mortgage alive is *written* in the deed of conveyance of the land and duly recorded, in such case the mortgage is extinguished. Dr. Pomeroy, in his admirable work on Equity Jurisprudence, vol. 2, pp. 248–9–50–1, tells us that the rule is *universal,* that where the *intention* is *expressed* in the conveyance, the mortgage remains open, and is not extinguished. The cases cited by the Supreme Court in the case of *Devereux* v. *Taft* (nor any cited by counsel here) do not involve or consider the question when there is an *express stipulation* that the mortgage shall be kept open to protect against liens and encumbrances. The case now under consideration by me illustrates how great injustice would result from a departure from the rule last stated by me.

This case is of novel impression in South Carolina, yet I have no hesitation in making my decision. I find the issues presented before me in favor of the defendant; and it is therefore adjudged and decreed that the complaint be dismissed with costs for the defendant.

*Mr. E. C. Haynsworth,* for appellant.

*Mr. J. H. Rion,* contra.

November 27, 1885.    The opinion of the court was delivered by

Mr. Justice McGowan.    This was an action to recover 210 acres of land under the following circumstances: On September 9, 1872, James M. Rutland and James H. Rion, as executors, conveyed to one G. P. Hoffman a tract of land containing 1,159 acres, which included the small tract in dispute. Hoffman gave his bond for the purchase money, with the defendant corporation as surety, and on the same day executed to the said railroad company a mortgage of the premises, to indemnify them against loss as such surety. On May 11, 1882, the plaintiff, Agnew, recovered a judgment against the said Hoffman and issued execution thereon. On October 27, 1882, the railroad company, as surety, having been required to make payments on the purchase money, settled with Hoffman, who assigned certain choses in action, paid a sum in lumber, and conveyed 560 acres of the land mortgaged to them, including the 210 acres now in dispute, towards payment of the mortgage debt.

This conveyance contained the following clause: "All of said tracts being portions of a tract of 1,159 acres purchased by me of James M. Rutland and James H. Rion, as executors, &c., on September 9, 1872, payment secured by my bond with the aforesaid company as surety, and a contemporaneous mortgage of the premises for joint security of grantors and surety; this grant, bargain, sale, and release being made with the consent of James· H. Rion as a conveyance of the said three tracts of land, the same having been paid for by said railroad company; and hence I do hereby grant, bargain, sell, and release the said land subject to a

mortgage to said company, which is to remain open to protect against claim of dower, liens, and encumbrances, together," &c.

On March 3, 1884, the sheriff, under plaintiff's execution, sold the tract of 210 acres, and the plaintiff, becoming the purchaser, brought this action for the land.   Trial by jury was waived, and Judge Wallace dismissed the complaint.   The plaintiff appeals to this court upon the following grounds: "1. Because his honor did not find, in his fifth finding of fact, that on October 27, 1882, the said G. P. Hoffman and the defendant herein came to a settlement, in which said G. P. Hoffman assigned some choses in action and paid the defendant $205 in lumber, and conveyed to the defendant, in settlement of the balance due by him, 568 9-10 acres, it being a part of the original tract, and consisting of three tracts, of which the tract of 210 acres mentioned in the complaint is one.   2. Because his honor held that there being an express stipulation in the deed of conveyance that said mortgage should remain open, the conveyance from Hoffman to the defendant did not operate to merge or satisfy said mortgage as to the land conveyed to the defendant.   3. Because his honor did not hold that said mortgage was merged or satisfied by such conveyance, and that the plaintiff is entitled to the possession of said tract of land. 4. Because his honor did not hold that even if said mortgage was not merged or satisfied, the plaintiff is entitled to recover the possession thereof, subject to the lien of said mortgage," &c.

It is true that under our law a mortgage of real estate is merely a security for the debt, the legal title remaining in the mortgagor. The conveyance of the land by Hoffman to the railroad company was subsequent to the recovery of Agnew's judgment against Hoffman, and, therefore, that conveyance alone could not stand in the way of title acquired under Agnew's judgment.  The answer to this, however, is, that there was a lien upon the land when Agnew's judgment was recovered, viz., the mortgage of the railroad company, and that the land was conveyed to the company in payment of the debt secured by that senior lien.   But to this it is replied that the conveyance of Hoffman, the mortgagor, to the company, the mortgagee, operated, by way of merger, to extinguish not only the whole mortgage debt, but the mortgage itself, leaving the land subject to the next lien, precisely as if the.

mortgage had never existed; so that the question is whether the court must apply the technical legal doctrine of merger, and thereby declare the mortgage extinguished, notwithstanding the stipulation of the parties, expressed in the conveyance itself, that the mortgage should "remain open" to protect the purchaser, who had paid the debt, against liens subsequent to the mortgage, but prior to the conveyance of Hoffman to the railroad company.

In this State the legal doctrine of merger has been applied to the case of a mortgagee purchasing from the mortgagor, or under legal process against him, the interest known as the equity of redemption. See *Devereux* v. *Taft,* 20 S. C., 558. The general doctrine, as stated by Chancellor Wardlaw in the case of *Allen* v. *Richardson* (9 *Rich. Eq.,* 53), is, "that a mortgagee, who buys the estate under mortgage, not under process of foreclosure of his lien, extinguishes the debt or claim with lien on the land," &c. It will be observed that the rule as here announced excludes from its operation a case, where the mortgage premises are sold to pay the mortgage debt, under process of foreclosure. In such case the mortgagee may purchase and take good title. So far as title to the premises is concerned, it is somewhat difficult to draw a distinction in principle between a sale for the purpose of paying the mortgage debt under proceedings of foreclosure and one for the same purpose by the mortgagor himself. It is at least intelligible how such a purchase might be held as an extinguishment of any portion of the mortgage debt which the conveyance of the land failed to pay. But it is not equally clear why a private sale for the same purpose should be considered as placing the matter in the same condition as if neither the mortgage debt nor the mortgage had ever existed. It would seem that a conveyance in part payment of the debt secured should at least carry good title to the extent of the payment made upon the debt. Such is undoubtedly the result when the sale is made under proceedings to foreclose the lien.

But, assuming the rule to be as stated, none of the cases in our books deal with any of the exceptions and qualifications of the general rule; as, for instance, the case of an express written agreement by the parties that there should be no merger, but that the mortgage shall remain open for the protection of the

purchaser. Although this precise point has never before arisen in this State, it seems that the general law upon the subject is well settled. Mr. Pomeroy states the doctrine as follows: "When the owner of the fee becomes absolutely entitled in his own right to a charge or encumbrance upon the same land, with no intervening interest or lien, the charge will at law merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity, where no intention to prevent it has been expressed, and none is implied from the circumstances and interests of the party. Generally the same results follow, whether a mortgagee assigns a mortgage to the mortgagor or the mortgagor conveys the land to the mortgagee." 2 *Pom. Eq. Jur.*, § 790. And in the sections following he further says: "If there is no reason for keeping it (the mortgage) alive, then equity will, in the absence of any declaration of his intention, destroy it; but if there is any reason for keeping it alive, such as the existence of another encumbrance, equity will not destroy it. In short, where the legal ownership of the land and the absolute ownership of the encumbrance become vested in the same person, the intention governs the merger in equity. If the intention has been expressed, it controls," &c. 2 *Pom. Eq. Jur.*, § 791, and authorities in note; *Jones Mort.*, § 848; *Insurance Company* v. *Murphy*, 111 *U. S.*, 744.

We agree with the Circuit Judge, that in this case the express agreement of the parties prevented a technical merger, and the senior mortgage of the company is still open. The plaintiff, Agnew, only purchased the equity of redemption, and he is not entitled to recover possession of the land in this action. Possibly he may, upon tender of the mortgage debt, have his action to redeem, but upon that subject we rule nothing in advance.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McIVER. I cannot concur in the conclusion reached by the majority of the court in this case. The general rule, as established in this State, undoubtedly is, that where

the mortgagee buys the mortgaged premises, except under a sale for a foreclosure of the mortgage, the mortgage debt is extinguished.    *Schnell* v. *Schroder, Bail. Eq.*, 334 ; *McLure* v. *Wheeler*, 6 *Rich. Eq.*, 343 ; *Allen* v. *Richardson*, 9 *Rich. Eq.*, 53 ; *Devereux* v. *Taft*, 20 *S. C.*, 555, recognized, also, in *Trimmier* v. *Vise*, 17 *S. C.*, 499.

It is claimed, however, that to this admitted general rule there is at least one exception, viz., that where there is an express stipulation to the contrary, at the time the mortgagee acquires the title to the mortgaged premises, no extinguishment will take place. There is no doubt that there are strong authorities elsewhere, some of which are cited in the opinion of the majority of the court, which not only fully sustain the view there taken, but go much further, and establish the doctrine that in equity it is always a question of intention, and that even where such intention is not expressed, it may be inferred from the fact that it is to the interest of the mortgagee to keep the mortgage alive, as, for example, where there is an intervening encumbrance. But these authorities, while entitled to the highest respect, are not, like the decisions in this State, binding upon this court, whose duty it is to determine what is the law of *this State.* Now, it is not pretended that there is any case in this State which establishes or even recognizes any such exception as that contended for, to the well settled general rule. On the contrary, in all of the cases above cited, there were intervening encumbrances, which made it to the interest of the mortgagee that the mortgage debt should not be extinguished, and yet there is not the slightest intimation in any one of them that that circumstance could affect the result.

Indeed, it may be doubted whether the doctrine of merger, upon which the rule, with its exceptions, is rested by the authorities elsewhere, is applicable to a mortgage in this State. Merger applies to *an estate,* and as, since the act of 1791, a mortgage here is not the conveyance of an estate, but is simply a security for a debt, it may lead to confusion if such a doctrine be applied to a mortgage. The principle upon which the rule here is based is well stated by Mr. Chief Justice Simpson in *Trimmier* v. *Vise*, 17 *S. C.*, at page 501, as follows: "The right of the mortgagor

to redeem being the only interest that can be sold by a judgment junior to the mortgage, the purchaser at such sale, whether he be the mortgagee or a stranger, is supposed to give the amount of his bid for that interest, over and above the mortgage debt, leaving the land, when purchased by a stranger, still subject to be sold for the mortgage debt, and when purchased by the mortgagee to be applied in satisfaction of his debt, which by operation of law is thereby extinguished." Or, as is said by Mr. Chief Justice Moses, in *Edwards* v. *Sanders*, 6 *S. C.*, at page 334: "All the right reserved by the mortgagor is transferred to the mortgagee, who then holds in the premises the interest both of the creditor and debtor, and there is nothing left on which the lien of the mortgage can operate. Where the sale is under a junior judgment, a third party purchasing must not only pay the bid which he has made for the only interest which the sheriff can sell, but, to enjoy an unencumbered estate in the land, he must satisfy the mortgage which still retains its lien. If the mortgagee purchases, to whom is such payment to be made? Not only is the lien destroyed, but the debt also."

I am, therefore, unable to find any warrant for saying that there is any such exception as that contended for to, what I understand to be, the well settled rule in this State; nor do I see any reason why such an exception should be engrafted on the rule, inasmuch as a mortgagee always has it in his power to protect himself by the ordinary proceeding for the foreclosure of his mortgage.

It is said, however, that in this case there was an express agreement, entered into in writing, between the mortgagor and mortgagee, at the time of the purchase, that the mortgage was "to remain open to protect against claim of dower, liens, and encumbrances," and that, as there is no case in this State where the general rule has been applied, in which there was any such agreement, the question is now an open one, and we are at liberty to follow the authorities elsewhere. This is all true, but how such an agreement can affect the rights of third persons not parties to it, is difficult to understand. But in addition to this, the fact that the intention which, according to the authorities relied on, determines the question of merger, is expressed in writing, cannot be

decisive. It may facilitate proof of its existence, but it cannot give it an effect which it would not otherwise have. According to those authorities, if the intention that there shall be no merger is ascertained, whether by express proof or implied from the circumstances, it controls. I do not see how it is possible that the mode in which it is ascertained can affect its nature or effects. It is true that there are some things which are required to be in writing, as, for example, a contract for the sale of land, which have no efficacy unless so expressed; but this is not of that class. It does not seem to me, therefore, that the fact that the intention that the mortgage should not be extinguished, was expressed in writing, takes this case out of the operation of the rule as settled in this State.

There is no doubt that at the time the defendant bought the land from Hoffman now in controversy it was covered by two liens—the mortgage to the railroad company and the judgment in favor of the plaintiff—and there is as little doubt that if any one else had been the purchaser, he could not have acquired an unencumbered title without satisfying both of those liens, as against those who held those liens he could not retain the land unless he paid the debts secured by such liens. How does the fact that the mortgagee was the purchaser alter the case? To hold the land, it must pay or satisfy both of the liens; and being thus liable to pay the mortgage debt due to itself, the company united in itself the character of both debtor and creditor, and, according to a well settled rule, when this is the case, the debt was paid by operation of law, and the only remaining lien on the land was the judgment in favor of the plaintiff. This lien being senior to the title which the defendant acquired by purchase from Hoffman, any sale under it must give the purchaser at such sale the better title, and hence it seems to me that the plaintiff in this case is entitled to recover the land. Of course, I do not mean to say that the mere fact that the purchaser has bought the mortgaged premises makes him absolutely liable, in all events, to pay the mortgage debt, but I do mean to say that before he can retain the land he must pay, or in some other way satisfy, the mortgage debt; and hence, if he insists upon retaining the land, he thereby becomes liable for the mortgage debt.

It may be a hard case that the company should lose its debt as well as the land which it received in payment of such debt, but it only adds another to the numerous cases in which parties have incautiously bought and paid for property covered by liens, the enforcement of which subsequently has deprived them of the property. In this case, however, it appears that the parcel of land here in controversy does not constitute the whole of the land covered by the mortgage, and it may be, under the case of *Trimmier* v. *Vise, supra,* that the defendant may yet enforce its mortgage upon the balance of the land. Be that as it may, however, it does seem to me altogether anomalous that the defendant, after acquiring the fee simple title to the land in controversy, should still hold a mortgage upon it—a lien upon its own land.

But if I am wrong in these views, and the defendant still retains its mortgage lien on the premises, still I do not see why the plaintiff cannot recover the land and hold possession of it until it is sold under proper proceedings to foreclose the mortgage. If a person other than the mortgagee had bought the land at private sale from the mortgagor, he could only have bought the mortgagor's interest therein, called the equity of redemption, and such interest would still be liable, in the hands of such purchaser, to levy and sale under the plaintiff's judgment; and if sold under that judgment and bought by the plaintiff, he, certainly, could recover from such purchaser the possession of the land and hold it until it was sold under a proceeding to foreclose the mortgage. How does the fact, that the purchaser at private sale was the mortgagee, alter the case? The mortgagee by such purchase acquired, and could only acquire, the equity of redemption, which, in its hands as well as in the hands of any other purchaser, would be liable to levy and sale under the plaintiff's judgment; and when so sold and bought by the plaintiff, it seems to me that he is entitled to recover the possession and hold it until the defendant sees fit to have it sold under its mortgage.

It may be said that this would lead to circuity of action, and involve the necessity of instituting another action, when the whole matter could be determined in the present proceeding, or rather in the action which the plaintiff ought to have brought, viz., an action to redeem, which it was argued was the plaintiff's only

remedy. This course would be open to two objections: first, it would force a plaintiff to advance from his own pocket the whole amount of the mortgage debt, which might in many cases prove to be very inconvenient, if not impracticable, whereas if the land is sold at public outcry, and it is really worth more than the mortgage debt, the plaintiff's interests would be very much better protected. Indeed, to allow the mortgaged premises, subject also to a junior lien, to be transferred to the mortgagee by a private arrangement between the mortgagee and mortgagor, would open the door to collusion between these parties, which might work serious detriment to the holder of the junior lien; but where the premises are sold at public sale under the mortgage, the supposition is that they will bring their full value and the interests of all parties are protected. Of course, I am not to be understood as intimating that there was any collusion in the present case, as there is no ground for such an intimation; but I am only looking to the general principle.

The second objection to the remedy by action to redeem, suggested as the plaintiff's only remedy, is that it would deprive the plaintiff of the right to throw the mortgagee upon the balance of the mortgaged premises, upon the principle that where there are two creditors of a common debtor, one of whom has a claim or lien upon two funds, and the other upon only one of these funds, the latter has an equity to require the former first to exhaust the fund upon which he has no claim or lien. It appears that the mortgage covered 1,159 acres, and the portion here in dispute is only 210 acres. What has become of the balance of the land does not appear. All that we know is that 568 9-10 acres, embracing the tract in dispute, has been conveyed to the defendant. If the remainder of the 1,159 acres is still in the hands of the mortgagor, then clearly the defendant ought to be required to go upon that for the mortgage debt, to the relief of the 210 acres claimed by the plaintiff. This, however, could not be required if the plaintiff's only remedy is an action to redeem. But even if this objection should not prove to be practically applicable to this particular case, yet it is sufficient to illustrate my objections to the conclusion reached by the majority of the court.

It seems to me, therefore, that in any view of the case the

plaintiff is entitled to recover possession of the land in contro-
versy.

Judgment affirmed.