**In re FERNWOOD MARKETS t/a The Salad Boat, Debtor.**

**Louis S. ESPOSITO, Sr., Trustee, Plaintiff,**

**v.**

**TITLE INSURANCE CO. OF PA. and Commonwealth of Pennsylvania and Dept. of Labor and Industry and Louis Shrager and Sons and Nixon Uniform, Inc. and Federal Leasing Corp. and Robert L. Pinto, Esquire and Borough of East Lansdowne, Defendants.**

**Bankruptcy No. 84–03218K.
Adv. No. 86–1334S.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 22, 1987.

Lawrence J. Tabas, Leona Mogavero, Philadelphia, Pa., for trustee.

John F. Murphy, Philadelphia, Pa., for Shrager.

Jack B. Justice, Philadelphia, Pa., for Title Ins. Corp. of Pa.

Jonathan H. Ganz, Philadelphia, Pa., for debtor.

Stuart M. Bliwas, Asst. Counsel, for Com. of Pa. Dept. of Labor and Industry, Office of Employment Sec.

Robert Lapowsky, Philadelphia, Pa., for Official Creditors' Committee.

James C. DelBello, Philadelphia, Pa., for Delaware County Tax Claim Bureau.

Mark Pinnie, Media, Pa., for Borough of East Lansdowne.

Louis J. Esposito, Philadelphia, Pa., trustee.

Virginia Powel, Ass't. U.S. Atty., Philadelphia, Pa., for U.S.

Salaman, Salaman & Cherwony, Philadelphia, Pa., for Soda Rental.

Gibbons, Buckley, Smith, Palmer & Proud, P.C., Media, Pa., for Rosemary Maychak.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The matters before us to be decided are (1) Whether a sale of real property which took place on March 25, 1986, per a court order which authorized the sale pursuant to 11 U.S.C. § 363(b), and which was contemplated by the Debtor's confirmed Chapter 11 Plan, is valid as to a judgment creditor who allegedly received no notice of the sale; and (2) If the sale is invalid, what effect will this have on the sale?

We hold that the sale is voidable, at the option of the creditor, because he failed to receive adequate notice of the sale as required by 11 U.S.C. § 363(b)(1) and the precepts of due process of law. However, we further hold that, if the creditor opts to void the sale, which he must do within five days of this Order, then the sale is void as to all parties and will be, after disposition of any objections thereto, reaffirmed or rescheduled.

The recitation of an involved procedural history is a necessary backdrop to this decision. Fernwood Markets, Inc., t/a The Salad Boat (hereinafter referred to as "The Debtor"), filed a Voluntary Chapter 11 peti-

tion for bankruptcy on September 26, 1984. About the same time, the Debtor filed a matrix mailing list of creditors listing, *inter alia,* Louis Shrager & Sons, Inc. (hereinafter referred to as "Shrager"), with a disputed claim based on a judgment of $28,710.33, at the following address:

Louis Shrager & Sons

c/o Dilworth, Paxson, Kalish & Kauffman

123 South Broad Street

Philadelphia, Pennsylvania 19109

Apparently, the Debtor used this address because it was aware that Shrager was represented by a member of Dilworth, Paxson, Kalish & Kaufmann (hereinafter referred to as "the Dilworth firm").

The underlying judgment was entered by the Delaware County Court of Common Pleas. This created a lien on all of the Debtor's realty located in the county in which judgment was entered. 42 Pa.C.S.A. § 4303; *In re Ashe,* 712 F.2d 864, 873 (3d Cir.1983).

On January 28, 1986, the Debtor filed a Motion pursuant to 11 U.S.C. § 363(b)(1) for Leave to Sell Assets Out of the Ordinary Course of Business free and clear of liens with all valid liens and encumbrances attaching to the proceeds of the sale. The property in question was real estate located at 927 Baltimore Pike, East Lansdowne, Delaware County, Pennsylvania (hereinafter referred to as "the premises"), where the Debtor previously had conducted a restaurant business. The parties agree that the Notice of the proposed sale was mailed to the address listed above. A hearing on the Motion took place, at which no objections to the sale were raised, and an Order was entered on February 6, 1986, granting the Motion.

Meanwhile, on December 31, 1985, the Debtor's Second Amended Plan of Reorganization (hereinafter referred to as "the Plan") and Third Amended Disclosure Statement (hereinafter referred to as "the Disclosure Statement") were filed. On January 23, 1986, a hearing on the Disclo-sure Statement took place, and it was approved by Court Order. On March 13, 1986, an Order was entered confirming the Plan.

On March 25, 1986, settlement was held on the sale of the premises for the sum of $340,000.00, of which $210,000.00 was escrowed by the Title Insurance Company of Pennsylvania (hereinafter referred to as "TICP"). The mortgages were paid out of the escrow fund, leaving the sum of $95,535.42 plus interest still being held in escrow by TICP. By deed dated March 25, 1986, the Trustee, Louis Esposito, Sr., who was appointed on February 12, 1986, pursuant to an application by the Official Creditors' Committee, conveyed title to the premises to the purchaser, Crusader Restaurants. The deed was recorded on March 26, 1986, in the office of the Recorder of Deeds for Delaware County, Pennsylvania.

On November 10, 1986, apparently because TICP was refusing to release the funds, the Trustee filed the instant Adversary Complaint to Sell Real Estate Free and Clear of All Liens and Encumbrances for the same premises already conveyed on March 25, 1986, at Adv. No. 86–1334S. On January 23, 1987, pursuant to an Order dated January 22, 1987, allowing same, the Trustee filed an Amended Complaint to Compel Turnover of Funds of Estate pursuant to 11 U.S.C. § 542 and to Reaffirm Sale of Real Estate Free and Clear of All Liens and Encumbrances. An Answer was filed on February 20, 1987, by Shrager, in which Shrager asserted the defense that the sale was invalid, due to lack of notice to it.

A hearing took place on March 11, 1987, at which the testimony of Jay Shrager, the principal of Shrager, was adduced.[1] An Order was entered on March 12, 1987, which directed, *inter alia,* the filing of Briefs: Shrager, on or by March 25, 1987, and the Trustee, on or by April 8, 1987, and which also directed the Trustee to file any actions objecting to or attacking the claims

---

**1.** On this date, Shrager's Motion for Contempt and for Sanctions Against the Trustee for seeking a continuance despite the Court Order scheduling the trial for February, 1987, was also heard and denied by the Court.

of any of the Defendants in this action on or before April 17, 1987. Subsequently, the Briefs were filed in accordance with the Court's Order. Additionally, Shrager was afforded the opportunity to file a Reply Brief on or before April 15, 1987, which was so filed.

Lastly, we note that on April 17, 1987, the Trustee filed eleven separate Adversary Complaints against all of the Defendants in this action, including Shrager, except TICP, and the Borough of East Lansdowne, against whom it filed a Motion to avoid a lien allegedly obtained in violation of the automatic stay in the main case, seeking to the various liens against the premises. All of the adversarial proceedings were scheduled for trial on June 10, 1987, by the Clerk's Office. However, our Order dated March 12, 1987, had already set the hearings on the Amended Complaint, as well as any other matters filed by the Trustee attacking the claims of the Defendants in this action, for a hearing on May 27, 1987, and Counsel for the Trustee advised us that she so notified all of these parties. In an abundance of caution, we reiterate this scheduling in our Order attached herto.

Against the backdrop of the above-recited procedural nightmare, the end of which is not yet in sight, we turn to the relatively narrow question of what effectuates the notice required for the sale of property of the estate other than in the ordinary course of business. At the hearing, Mr. Shrager testified that his Company had not received any notice as to the proposed sale prior to the entry of the Order in February, 1986. He further testified that his Company's address was well-known to the Debtor, since they had had business dealings with each other for fourteen years. Mr. Shrager testified that his Company had been at their present address, 4041 Ridge Avenue, Philadelphia, Pennsylvania, since March, 1983, and that they were listed at that address in the September, 1985, edition of the Philadelphia telephone directory. Mr. Shrager further testified that Richard Gordon, Esquire, of the law firm of the Dilworth firm, had represented his Company until his retirement. Although Mr. Shrager could not recall the exact date that Mr. Gordon ceased to represent his company, he emphatically asserted that no one from the Dilworth firm ever informed him of the sale of the premises. He also testified that the Dilworth firm employed more than one hundred attorneys.

Shrager contends that notice sent to the care of Dilworth was insufficient notice as required by § 363(b)(1). This Code section provides, simply, as follows: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

Ample authority exists for the principle that sales within the scope of § 363(b)(1), of which no proper notice was provided, may be set aside. *See, e.g., M.R.R. Traders, Inc. v. Cave Atlantique, Inc.*, 788 F.2d 816, 818 (1st Cir.1986); *In re First Baptist Church, Inc.*, 564 F.2d 677, 679 (5th Cir. 1977); and *In re Stanley Engineering Corp.*, 164 F.2d 316, 318 (3d Cir.1947), *cert. denied*, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948); *In re International Services, Inc.*, 25 B.R. 66, 70–71 (Bankr.D.Conn. 1982); and *In re Foster*, 19 B.R. 28, 29 (Bankr.E.D.Pa.1982).

Reference may also made to Bankruptcy Rule (hereinafter referred to as "B.R.") 2002 to ascertain whether notice as was appropriate in the particular circumstances was given, as B.R. 2002 governs, *inter alia*, the amount of notice, the content of the notice, and the proper recipient or addressees of notice of a proposed use, sale, or lease of property other than in the ordinary course of business. Particularly pertinent is subsection (g) of B.R. 2002, which provides as follows:

> (g) Addresses of notices. All notices required to be mailed under this rule to a creditor, equity holder, or indenture trustee shall be addressed as he or his authorized agent may direct in a request filed ·with the court, otherwise, to the address shown in the list of creditors or the schedule whichever is filed later, *but if a different address is stated in a proof claim duly filed, that address shall be used* (emphasis added).

■ It is undisputed that Notice to Shrager was sent care of the Dilworth firm. However, Entry No. 27 of the Claims Docket on file in the Clerk's Office reflects that on January 9, 1986, Shrager filed a proof of claim in the amount of $28,710.00 in which he stated the following address:

Louis Shrager & Sons

P.O. Box 689

Bala-Cynwyd, PA 19004

Since the original Motion for Leave to Sell the Property was not filed until January 28, 1986, by the Debtor, it is evident to us that the notice required under § 363(b)(1) and B.R. 2002 should have been sent to the address stated in his proof of claim. We are further persuaded that the Trustee's argument that it is the creditor's responsibility to keep the Court advised of its current address is well-met by considering the address on the proof of claim filed on January 9, 1986.

■ Furthermore, as Shrager contends, elementary principles of due process of law require that it receive notice before it may be deprived of its interest in the Debtor's property. Shrager cites to a dated, but nevertheless apparently viable case, for the principle that a bankruptcy sale affecting its interests without notice would be violative of due process. *Ray v. Norseworthy*, 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1874). *See also Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); and *In re Clark*, 69 B.R. 885, 892 (Bankr.E.D.Pa.1987).

We note further support for our conclusion in the following passage concerning 11 U.S.C. § 363(m), under which good faith purchasers are protected from the affects of a reversal on appeal of the authorization to sell, in Collier: "§ 363(m) will not, however, protect a party buying from the trustee in a sale free and clear of liens where no notice is given to the lienholder. Such a purchaser will be held to have purchased subject to the lien." 2 COLLIER ON BANKRUPTCY, ¶ 363.13, at 363–40 (15th ed. 1987).

■ The only reply of the Trustee is an argument that, pursuant to 11 U.S.C. § 1141(a), the confirmed Chapter 11 Plan of Reorganization bound all creditors and obviated the need to comply with the notice and hearing requirements of 11 U.S.C. § 363(b)(1). A review of the chronology of events does not support the applicability of § 1141(a) to the case *sub judice*. It is true that the sale or settlement took place on March 25, 1986, after the confirmation of the plan on March 13, 1986. However, it appears clear to us that the sale of the premises was authorized by Court Order of February 6, 1986, pursuant to the Debtor's § 363 Motion For Leave to Sell Assets Out of the Ordinary Course of Business Free and Clear of Liens and Encumbrances, before the confirmation took place. Moreover, this argument proves too much, because it would, if accepted, render completely nugatory the Debtor's filing of a § 363(b)(1) motion. If it filed the motion, and purported to provide notice prior to the sale, we must assume such notice was required to be provided properly, in accordance with the spirit of § 363(b)(1) and due process of law, to give all interested parties notice.

The one case cited by the Trustee, *In re Wood*, 47 B.R. 774 (Bankr.W.D.Wis.1985), is clearly distinguishable on its facts, because there, the debtor *had already* been operating under a confirmed plan for eight months before he scheduled an auction sale of his dairy herd and milking equipment. The *Wood* court held that § 363 did not apply to either the auction or the private sale because the debtor's plan had been confirmed prior to these transactions, citing 11 U.S.C. § 1141(a). *Id.*, at 776. The distinction between the *Wood* case and the matter under consideration is that, in *Wood*, the debtor was acting under a confirmed plan which did not restrict his right to sell his herd or require him to give notice and obtain court approval. Here, the Debtor had proceeded under § 363(b) to obtain Court approval, and then obtained confirmation of a Plan incorporating what had been authorized under § 363(b), followed by the settlement or sale of the premises. Finally, the *Wood* court held that the pur-

ported sale was *not* a sale but an unperfected security agreement on a loan, which is clearly distinguishable from the case *sub judice.*

■ Having decided that the sale of March 25, 1986, was defective does not resolve the issue of what the impact of such a finding is. Shrager seeks a declaration from us, not that we invalidate the sale, but rather that we reaffirm the sale with the provision that its lien remain intact.

Here, we part company with Shrager's contentions, for several reasons. First, we believe that either the sale is totally void or voidable, or it is valid. We do not believe that it can be valid, or "reaffirmed," as to one lienholder and not to another. Secondly, we believe that allowing Shrager to retain its lien—or, more practically, pursue a claim against the TICP—while requiring other lienholders, who may be senior to Shrager, to resort to the sale proceeds just because of the fortuitous circumstance that Shrager failed to get proper notice of the sale would be to provide Shrager with an unjustified and unjustifiable windfall.

■ Finally, the result reached by us is not inconsistent with any of the cases cited heretofore and is completely consistent with the result reached in another hoary Supreme Court bankruptcy case, *Factors' & Traders' Insurance Co. v. Murphy,* 111 U.S. 738, 4 S.Ct. 679, 28 L.Ed. 582 (1884). Citing and following *Ray v. Noreworthy, supra,* the Court holds that, when a lienholder who failed to receive proper notice of a bankruptcy sale challenged the sale, she could

> choose ... to assert her lien and demand a new sale of the land, ... but it must be subject to the rights of all parties as they stood before the other sale, which, by reason of her absence and her objections,

is ineffectual to bar incumbrances, as it was inclined to do. 111 U.S. at 743 [4 S.Ct. at 681].

As the Court points out, it would be grossly inequitable "to hold that this sale discharged part of the liens against the property and increased thereby the value of other liens at the expense of the purchasers." *Id.*

■ We are not certain that Shrager anticipated this "all or nothing" result reached by us, and, since it was subject to improper notice of the sale, we will give it a benefit of a choice as to whether it wishes to void this sale, and thus restore all of the parties, including all of the lienholders, to the status quo prior to the sale, or whether it wishes to let the sale go through and merely attempt to attach its lien to the proceeds in its regular turn. If it does choose to void the sale, we would caution that we will merely direct that notice be provided to all interested parties, including Shrager, and we will entertain objections, in some reduced time period due to the long pendency of this matter, which we would have entertained at the time of the earlier notice.[2] Moreover, all parties other than Shrager, unless they have equally meritorious equitable objections, may be held to have waived their right to object by not doing so in response to the previous notice. The practical result may thus be that only Shrager will be able to assert that it will have no viable objections, and the sale would be reaffirmed in any event.

We also think it is vital that Shrager decide whether it elects to void the sale promptly, prior to the score of hearings scheduled at 10:00 A.M. on May 27, 1987, so that we can at least sort out this matter at that time. We therefore direct that Shrager make this election in writing, and

---

**2.** Since this was technically a pre-confirmation disposition of the most significant asset of the Debtor, objections which could be raised are lack of adequate consideration, lack of good faith, *see In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir., 1986), or absence of circumstances requiring the sale at this time. *See In re Solar Mfg. Co.,* 176 F.2d 493 (3d Cir.1949). However, we would take into account that confirmation subsequently occurred without objection to the sale, and we do give deference to the business judgment of a debtor in possession and a Trustee, both of whom concurred that the sale was appropriate. *See In re Grant Broadcasting of Philadelphia, Inc.* (Second Opinion), 71 B.R. 390, 397–98 (Bankr.E. D.Pa.1987), and cases cited therein.

file same with the Clerk of this Court, on or before 9:30 A.M. on May 27, 1987.

An Order consistent with this Opinion shall issue this date, and we will direct that telephonic notice of its contents be delivered to Counsel for Shrager, the Trustee, and TICP this day.